1    **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                **FOR THE DISTRICT OF ARIZONA**

8

9    Marcus Cornell Bynum,                    No. CV-18-0003-PHX-DGC

10              Plaintiff,                     **ORDER**

11   v.

12   Nancy A. Berryhill, Acting Commissioner
     of Social Security Administration,
13
                Defendant.
14

15

16          Plaintiff Marcus Cornell Bynum seeks review under 42 U.S.C. § 405(g) of the

17   final decision of the Commissioner of Social Security which denied his disability

18   insurance benefits under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security

19   Act. For reasons set forth below, the Court will deny Plaintiff's challenge to the decision

20   of the Administrative Law Judge ("ALJ").

21   **I.    Background.**

22          Plaintiff is a 42 year-old man with a high school education. A.R. 47, 158.

23   Plaintiff previously worked as a dairy operator, a hazardous materials technician, a

24   landscape laborer, and a truck driver. A.R. 70. Plaintiff applied for disability benefits on

25   November 18, 2013, alleging disability beginning May 2, 2013. A.R. 155-61. On

26   May 17, 2016, Plaintiff appeared and testified at a hearing before the ALJ. A.R. 38-75.

27   A vocational expert also testified. *Id.* On August 1, 2016, the ALJ issued a partially

28   favorable decision, finding Plaintiff was disabled within the meaning of the Social

Security Act from May 2, 2013, through August 11, 2014. A.R. 15-32. But the ALJ found Plaintiff's disability ceased as of August 11, 2014, based on medical improvement. *Id.* The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on November 3, 2017. A.R. 1-5.

## II. Legal Standard.

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (internal citations and quotation marks omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

## III. The ALJ's Sequential Evaluation Process.

### A. Disability Determination.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at

step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018, and that he had not engaged in substantial gainful activity since May 2, 2013. A.R. 22. At step two, the ALJ found that Plaintiff had the following severe impairments from May 2, 2013 through August 11, 2014: cervical disc protrusion and syrinx, lumbar degenerative disc disease, radiculopathy status post right L4 hemilaminotomy, and partial facetectomy. A.R. 23. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. *Id.* At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work, but due to pain associated with his impairments, Plaintiff would be off-task twenty percent of the workday. A.R. 23. At step five, the ALJ found, considering Plaintiff's age, education, work experience, and RFC, that no jobs existed in significant numbers in the national

economy that the claimant could have performed from May 2, 2013 through August 11, 2014. A.R. 27.

**B. Continuation of Disability.**

Plaintiff underwent back surgery in April 2014. A.R. 25. The ALJ found that evidence in the record showed significant improvement in Plaintiff's condition after the surgery.

Once an ALJ finds a claimant disabled, the ALJ follows an eight-step sequential evaluation process to determine whether a claimant's disability continues through the date of the decision. *See* 20 C.F.R. § 404.1594(f)(1)-(8). The ALJ determines whether: (1) the claimant is engaging in substantial gainful activity, (2) the claimant has an impairment or combination of impairments which meets or medically equals the severity of a listed impairment, (3) medical improvement has occurred, (4) medical improvement is related to ability to work, (5) an exception to medical improvement applies, and whether (6) all the claimant's current combined impairments are severe. Then the ALJ assesses (7) the claimant's RFC based on current impairments and determines whether he can perform past relevant work, and (8) whether the claimant can perform other work that is suitable for his RFC, age, education, and work experience. *Id.*

The ALJ followed this sequential process and found, at step one, that Plaintiff had not engaged in substantial gainful activity since he became disabled on May 2, 2013. A.R. 22. At steps two and six, the ALJ found Plaintiff had no new impairments since August 12, 2014, the date his disability ended, and that his severe impairments were the same. A.R. 28. At step three, the ALJ found medical improvement occurred as of August 12, 2014. A.R. 28. At step four, the ALJ found the medical improvement was related to ability to work and that Plaintiff's RFC had increased. A.R. 29. Under steps seven and eight, the ALJ determined that Plaintiff could not perform past relevant work (A.R. 31), but that he could perform the full range of sedentary work and, beginning

1  August 12, 2014, jobs existed in the national economy that Plaintiff could perform
2  (A.R. 32).[1]

3  **IV.  Analysis.**

4  Plaintiff argues that the ALJ's decision is defective for two reasons: (1) the ALJ
5  erred in giving little to partial weight to the opinions of Plaintiff's treating physician, Dr.
6  Landsman; and (2) the ALJ rejected Plaintiff's testimony without providing clear and
7  convincing reasons.  Doc. 12 at 1.

8      **A.    Weighing of Medical Source Evidence.**

9          **1.    Legal Standard.**

10  A physician's opinion may be a treating source, examining source, or non-
11  examining source.  *See* 20 C.F.R. § 404.1527 (evaluating opinion evidence for claims
12  filed before March 2017); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  A treating
13  physician is one who provides or has provided the claimant with medical treatment or
14  evaluation, or who has an ongoing treatment relationship with the claimant.  *Id.* at
15  § 404.1527(a)(2).  Generally, an ALJ should give greatest weight to a treating physician's
16  opinion and more weight to the opinion of an examining physician than to one of a non-
17  examining physician.  *See Andrews*, 53 F.3d at 1040-41; *see also* 20 C.F.R.
18  § 404.1527(c)(2)-(6) (factors ALJ considers when evaluating opinion evidence).  If it is
19  not contradicted by another doctor's opinion, the opinion of a treating or examining
20  physician can be rejected only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 830
21  (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

22          **2.    Dr. Landsman.**

23  The ALJ gave partial weight to Dr. Landsman's 2013 opinions with respect to the
24  disability period of May 2013 to August 2014.  A.R. 26.  Plaintiff does not challenge this
25  decision.

26  _____

27      [1] The ALJ did not address the fifth step given her findings at steps three and four
28  that Plaintiff's medical condition had improved and the improvement was related to
    ability to work.  *See* 20 C.F.R. § 404.1594(f)(5).

- 5 -

The ALJ gave little weight to Dr. Landsman's August 2014 opinion and partial weight to his May 2016 opinion. A.R. 30-31. Plaintiff challenges both decisions. Because Dr. Landsman is a treating physician whose opinion is not contradicted by another doctor, the ALJ could discount Dr. Landsman's opinion only for clear and convincing reasons.[2] *Lester*, 81 F.3d at 830-31.

### a. First Opinion.

On August 21, 2014, Dr. Landsman opined that Plaintiff could sit, stand, and walk up to one hour in an eight-hour day; transport up to ten pounds; never climb, twist, bend or stoop; and drive up to one hour a day. A.R. 350. Dr. Landsman also opined that Plaintiff could not work at all. *Id.* The ALJ gave this opinion little weight for two reasons. First, the ALJ noted that Dr. Landsman's August 2014 opinion was "inconsistent with an April 2015 nerve conduction study showing no electrophysiological evidence indicative of right lumbosacral radiculopathy, right tibial peroneal neuropathy, right carpal tunnel syndrome, or a generalized neuropathy." A.R. 30; A.R. 391-94. Second, the ALJ stated that Dr. Landsman "made no adjustments in his medical source statement to account for the [Plaintiff's] medical improvement, which [was] demonstrated by the two identical MRI scans from August 2014 and April 2016[,] as well as his own physical examination findings from December 2014." A.R. 30.

The Court finds the ALJ's first reason – that the 2015 nerve conduction study contradicted Dr. Landsman's opinion about Plaintiff's inability to work – to be clear and convincing. In describing the 2015 nerve study, the ALJ provided this explanation:

> Compared to the nerve conduction study from December 2013, this study showed marked improvement in the claimant's radiculopathy symptoms. Dr. Vehra found no electrophysiological evidence indicative of right lumbosacral radiculopathy, right tibial or peroneal neuropathy, right carpal

---

[2] Defendant asserts the Court need only ask whether "substantial evidence" supports the ALJ's credibility finding, citing *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Doc. 13 at 8. But in *Thomas*, the Ninth Circuit found that "[t]he ALJ gave specific, clear and convincing reasons for discounting" the testimony at issue. *Id.*

tunnel syndrome, or generalized neuropathy. The EMG showed normal results in the right lumbar paraspinal muscles.

A.R. 30. Despite this evidence of improvement from Plaintiff's 2013 condition, the ALJ noted that Dr. Landsman's 2014 opinion was "the same as his opinions from September and December 2013." *Id.*

The Court also finds the ALJ's second reason – Dr. Landsman made no adjustment to his 2013 opinion despite Plaintiff's medical improvement – to be clear and convincing. The ALJ had already noted that Plaintiff reported to Dr. Ehtesharni in May 2014 that he was "doing very well, with complete resolution of his right lower extremity symptoms." A.R. 25. The ALJ also cited an MRI scan from August 2014 as evidencing Plaintiff's medical improvement. A.R. 30. The ALJ provided this description:

> The scan showed stable mild bulging disc, small-left-sided posterolateral disc protrusion, and annular teat at L3-L4 resulting in only mild right and moderate right-sided neural foraminal stenosis without central canal spinal stenosis. The scan also showed relief of the right lateral recess stenosis and right-sided neural foraminal stenosis, which Dr. Uglietta noted was mild compared to the prior MRI scan from September 2013.

A.R. 28.

The ALJ also cited Dr. Landsman's own physical examination from December 2014. *Id.* The ALJ provided this summary of the examination:

> Physical examination showed no significant areas of pain to palpitation posteriorly, no signs of infection, and not signs of fluid collection or any other problem. Dr. Landsman noted that the claimant had normal motor and sensory function, symmetric reflexes, and no focal neurological deficits. These findings are supportive of medical improvement as of August 12, 2014.

A.R. 29 (citation omitted).

Plaintiff argues that Dr. Landsman reviewed the 2014 MRI and, although it clearly was different than the pre-surgery MRI, found that Plaintiff "may be getting some nerve impingement." A.R. 422. But that observation was made by Dr. Landsman in 2016 and

does not address the ALJ's concern that Dr. Landsman's 2014 opinion was the same as his 2013 opinion despite clear evidence of improvement.

To be sure, there is evidence in the record that supports varying conclusions, including Plaintiff's complaints of pain to Dr. Landsman and others in 2014 and 2015. As already noted, however, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954. The Court concludes that the ALJ's reasons for discounting Dr. Landsman's first opinion are supported by substantial evidence in the record and are clear and convincing.

### b. Second Opinion.

In March 2016, Dr. Landsman opined that Plaintiff could sit, stand, and walk up to one hour in an eight-hour day; lift and carry up to twenty-five pounds occasionally, twenty pounds frequently, and ten pounds continuously; never bend, squat, crawl, or climb; occasionally reach; must avoid unprotected heights and moving machinery; has mild restriction in driving automotive equipment; and is likely to be absent more than four days per month. A.R. 419. Dr. Landsman also opined that Plaintiff's impairments restricted his ability to provide consistent work effort; moderately restricted his ability to respond to customary work pressures or stress; and moderately restricted his ability to maintain interpersonal relationships and pay attention to tasks. A.R. 418-19; A.R. 434-35. The ALJ gave partial weight to this opinion for three reasons.

First, the ALJ found that Dr. Landsman's opinion was inconsistent with his own earlier progress note of May 2015, which showed that Plaintiff's gait appeared steady, his motor and sensory functions were normal, and his reflexes were symmetric. A.R. 31, 405. In March 2016, however, Dr. Landsman opined that Plaintiff exhibited reduced range of motion, an abnormal gait, and difficulty squatting and toe walking. A.R. 417. The ALJ does not explain why the May 2015 findings – the only findings cited in this portion of her opinion – should control over the later findings, and the Court does not

find this one set of notes to be a clear and convincing reason for discrediting the doctor's opinion.

Second, the ALJ noted that Plaintiff's course of treatment after his lumbar surgery had been minimal. A.R. 31. But Plaintiff testified that his sporadic treatment was often due to his lack of medical insurance and financial resources (A.R. 50-55, 60), and failure to secure treatment due to a lack of financial resources is not a clear and convincing reason to discredit a physician's testimony. "Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Trevizo v. Berryhill*, 871 F.3d 664, 681 (9th Cir. 2017) (citation omitted).

Third, the ALJ noted that "objective findings from the August 2014 and April 2016 MRI scans showe[ed] no evidence of spondylolysis at any level, normal marrow signal, and no compression fractures." A.R. 31. As noted above, the ALJ described the 2014 scan in some detail and explained why it reflected an improvement in Plaintiff's condition. The ALJ also noted that the 2016 MRI "contained the same findings as the prior MRI scan from August 2014." A.R. 30. The ALJ found that "[t]he fact that claimant's lumbar spine has remained the same over nearly a two-year span after his lumbar surgery suggests that his back pain has not worsened and is not as severe as alleged." A.R. 30.

Plaintiff notes that Dr. Landsman reviewed the 2016 MRI scan and, although it was different from Plaintiff's pre-surgery scan, found that Plaintiff "may be getting some nerve impingement." A.R. 422. Plaintiff argues that the ALJ erred in substituting her interpretation of the MRI for Dr. Landsman's. As Defendant notes, however, the ALJ "must . . . interpret the medical evidence." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). The Court cannot conclude that the ALJ erred when she partially discounted Dr. Landsman's opinion that did not vary from his pre-surgery opinion despite clear changes and improvements after the surgery.

The Court finds this to be a clear and convincing reason for discounting Dr. Landsman's 2016 opinion, supported by substantial evidence.

## B.  Evaluation of Plaintiff's Pain Testimony.

In evaluating a claimant's symptom testimony, the ALJ must engage in a two-step analysis.  First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged.  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).  The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptoms he has alleged, only that it could reasonably have caused some degree of the symptoms.  *Id.*  Second, if there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons.  *Id.* at 1015.

Plaintiff testified that symptoms associated with his back impairment failed to improve after his surgery and physical therapy.  A.R. 49-50.  He testified that he received pain management treatment after the surgery, but that the medication did not help his pain to the point of comfortability.  A.R. 51-52, 61.  Even watching television or reading, Plaintiff testified, he struggles to focus because of the pain.  A.R. 63.  At various times after his surgery, Plaintiff was prescribed Vicodin and other medications for pain management.  A.R.51-58.  But the medications did not help his pain and caused him side effects, including a queasy stomach, lack of balance, blurred vision, and dizziness.  *Id.* Plaintiff testified that the only medication he was taking at the time of the hearing was Tylenol P.M., in part because he has had sporadic insurance coverage and limited financial resources to secure other treatment.  A.R. 50-55, 57, 60.  Plaintiff testified that he continues to have constant pain in his lower back, all the way down his right leg and foot.  A.R. 58.  Plaintiff testified he can sit up for five minutes at most, stand for five minutes at most, walk up to 100 feet, and lift and carry half a pound.  A.R. 59.  He testified that he spends his day sitting down, and that he does not eat out, grocery shop, do chores, or visit friends or his children because of his pain.  A.R. 59-60.  Plaintiff also testified that using the restroom is becoming difficult.  A.R. 65.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. The ALJ then found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. A.R. 29. The ALJ provided several reasons for finding Plaintiff's testimony not fully credible.

The ALJ noted that "[t]reatment notes do not sustain the claimant's allegations of disabling conditions." A.R. 31. Among the treatment notes reviewed by the ALJ were the May 2014 notes indicating the Plaintiff "was doing very well, with complete resolution of his right lower extremity symptoms" (A.R. 25); Plaintiff's return to Dr. Landsman in July with some complaint of pain, for which he received medication (*id.*); Dr. Landsman's observation in December 2014 that there was no longer any foraminal narrowing, that physical examination showed no significant areas of pain, and that Plaintiff had normal motor and sensory function, symmetric reflexes, and no focal neurologic deficits, findings which supported improvement (A.R. 29); and Plaintiff's report to Dr. Burgher in 2015 that he received adequate pain relief with his current medications (*id.*).

The ALJ also observed: "As discussed in detail above, the claimant's nerve conduct study following his lumbar surgery showed no evidence of right lumbosacral radiculopathy or generalized neuropathy." A.R. 31. The ALJ previously discussed the 2015 nerve conduction study in some detail, finding that the study, when "[c]ompared to the nerve conduction study from December 2013," "showed marked improvement in the claimant's radiculopathy symptoms." A.R. 30. "Dr. Vehra found no electrophysiological evidence indicative of right lumbosacral radiculopathy, right tibial or peroneal neuropathy, right carpal tunnel syndrome, or generalized neuropathy." *Id.* Additionally, "[t]e EMG showed normal results in the right lumbar paraspinal muscles." *Id.* The ALJ thus found clear medical evidence of Plaintiff's improvement after the 2014 surgery, in contrast to his testimony that his back symptoms failed to improve after his surgery.

The ALJ also noted that "the MRI scans from August 2014 and April 2016 show improvement following surgery and only mild abnormalities." A.R. 31. Those studies were discussed in detail by the ALJ, as recounted above, and showed "relief of the right lateral recess stenosis and right-sided neural foraminal stenosis, which Dr. Uglietta noted was mild compared to the prior MRI scan from September 2013." A.R. 28. The ALJ found that the 2016 MRI "contained the same findings as the prior MRI scan from August 2014," and "[t]he fact that claimant's lumbar spine as remained the same over nearly a two-year span after his lumbar surgery suggests that his back pain has not worsened and is not as severe as alleged." A.R. 30.

The Court finds theses to be clear and convincing reasons. Although an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain, *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004), that is not what the ALJ did here. The ALJ found Plaintiff's testimony questionable because it was directly contradicted by medical evidence showing a clear improvement in his back condition following the 2014 surgery. And as noted, where the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954.[3]

**IT IS ORDERED** that Plaintiff's challenge to the final decision of the Commissioner of Social Security is **denied**. The Clerk shall **terminate** this action.

Dated this 22nd day of October, 2018.

_David G. Campbell_
David G. Campbell
Senior United States District Judge

---

[3] The ALJ also noted that "[t]he claimant has been treated sporadically, and his course of treatment and use of only over-the-counter medications are not what would be expected with the disabling symptoms that he has alleged." A.R. 31. But Plaintiff testified that his sporadic treatment and filling of prescriptions was often due to his lack of medical insurance and financial resources (A.R. 50-55, 60), and failure to secure treatment due to a lack of financial resources is not a clear and convincing reason to discredit a plaintiff's pain testimony. *Trevizo*, 871 F.3d at 681.